**Bob D. CAMPBELL, et al., Plaintiffs,**

v.

**B.C. CHRISTOPHER SECURITIES COMPANY, et al., Defendants.**

**No. 88–0469–CV–W–9.**

United States District Court, W.D. Missouri, W.D.

Nov. 29, 1988.

Thomas J. Conway, John M. Klamann, Popham, Conway, Sweeny, Fremont & Bundschu, Kansas City, Mo., for Bob D. Campbell, et al.

J. Michael Vaughan, Linde Thomson Langworthy, Kohn & Van Dyke, Kansas

City, Mo., for B.C. Christopher Securities Co.

Jeffrey B. Rosen, Matthew R. Hale, Anthony J. Romano, Polsinelli White & Vardeman, Kansas City, Mo., for William Rosenberger.

## ORDER DENYING DEFENDANT ROSENBERGER'S MOTION TO DISMISS COUNTS II THROUGH VI

BARTLETT, District Judge.

On May 20, 1988, plaintiffs Bob Campbell, Lolis Campbell and Mark Campbell filed a six count complaint asserting the following claims: Count I (Bob Campbell) violation of § 10(b) of the Securities Exchange Act of 1934; Count II (Mark Campbell) state law fraud or misrepresentation; Count III (Mark Campbell) state law conversion; Count IV (Mark Campbell) state law conspiracy; Count V (Lolis Campbell) state law conversion; Count VI (Lolis Campbell) state law conspiracy. Plaintiffs name as defendants William Rosenberger, individually, and his employer, B.C. Christopher Securities Company (Christopher). All of the counts arise out of acts by Rosenberger that occurred primarily from July 8, through July 17, 1986.

Defendant Rosenberger has filed a motion to dismiss Counts II through VI for lack of federal jurisdiction asserting that: 1) there is no federal question jurisdiction as to these counts, and 2) all plaintiffs and defendant Rosenberger are citizens of Kansas and therefore complete diversity of citizenship does not exist among all plaintiffs and all defendants. Rosenberger asserts that plaintiffs will suffer no prejudice from a dismissal of Counts II through VI because plaintiffs filed a substantially identical suit in Jackson County Circuit Court on the same day that this case was filed here.

Defendant B.C. Christopher, a Missouri corporation, does not support or oppose defendant Rosenberger's motion to dismiss.

### I. Plaintiffs' Allegations

In a nutshell, plaintiffs allege the following: Bob Campbell, a long time Broker–Dealer client of Rosenberger, loaned Rosenberger about $300,000 on July 7, 1986, and took a promissory note for this amount. Bob allegedly consented to Rosenberger transferring 6,500 of Rosenberger's own shares of TCBY stock into Bob's account. On July 8, 1986, representatives of Christopher ordered 65,500 shares on margin to be made on Bob's account. On July 9, 1986, a demand for payment was made on Bob for the margin deposit on these shares. Bob transferred securities from other accounts to cover this margin request which he apparently believed was for only 6,500 shares. The 65,500 shares were deposited in Bob's account on July 10, 1986.

On July 10, 1986, Bob first advised defendants he could not pay the margin for the 65,500 shares and that the previous transfer of 65,500 was without authorization. On July 11, 1986, Bob told defendants he was going out of town for one week.

On July 15, 1986, Rosenberger approached Mark Campbell (Bob's son) and allegedly told Mark that his father wanted to purchase 65,500 shares and that if Mark would write a check for the margin sum ($1,064,375), it would not be cashed but would be held. Mark wrote the check; defendants negotiated it; the check bounced and defendants took Mark's dishonored check to Bob (at his out of town location) and told him Mark was in "a heap of trouble." In an apparent attempt to bail out his son, Bob transferred $500,000 worth of bonds owned solely by Lolis Campbell (Bob's wife) to Christopher.

On July 17, 1986, plaintiffs assert that defendants cancelled the original margin purchase of 65,500 shares and placed a new margin purchase order without Bob's authorization for 33,000 shares. Bob apparently asked that these shares be sold immediately to release his wife's $500,000 bonds and defendants allegedly failed to timely execute this order. The bottom line is that the stock plunged, Bob lost money, Lolis lost money and Mark believes the defendants converted his check, and its funds.

Defendants Rosenberger and Christopher, of course, deny many of plaintiffs'

allegations. However, the issue presently before me is the motion to dismiss for lack of jurisdiction.

## II. Discussion

In the instant case, three plaintiffs, all citizens of Kansas, are suing two defendants—one an individual who is a Kansas citizen, and one a corporation which is incorporated in Missouri. There are six counts and each count is brought by a single plaintiff against both defendants. No one disputes that jurisdiction exists in Count I by virtue of 28 U.S.C. § 1331. Rather, the dispute centers on whether Count I (Bob's § 10(b) claim) is sufficient to support pendent jurisdiction of two other *parties'* state law claims that arise out of closely related facts. Resolution of this dispute requires analysis of the "subtle and complex" pendent party concept which was severely curtailed in *Aldinger v. Howard,* 427 U.S. 1, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1976) (*overruled on other grounds* in *Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)).

The starting point in analyzing pendent jurisdiction is *United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed. 2d 218 (1966) which involved a pendent *claim,* that is, a state claim asserted against the same defendant against whom a federal claim was also alleged. There, the Court ruled that under Article III of the Constitution federal courts have the power to hear state law claims joined with federal claims if 1) the state and federal claims derive from a "common nucleus of operative fact;" 2) the federal claims are substantial; and 3) the claims would ordinarily be expected to be tried in one judicial proceeding. *Id.,* 383 U.S. at 726, 86 S.Ct. at 1139. The Court in *Gibbs* expressly noted that because pendent jurisdiction is a doctrine of discretion, it need not be exercised in every case in which it is found to exist. *Id.* Similarly, the Court reasoned that if the state issues substantially predominate, whether in terms of proof, the scope of the issues raised, or the comprehensiveness of the remedy sought, the state claims may be dismissed and left for

resolution by state tribunals. *Id.* at 726–27, 86 S.Ct. at 1139–40.

In *Aldinger,* the Court was faced with the pendent *party* problem but it declined to "lay down any sweeping pronouncement" on "whether the doctrine of pendent jurisdiction exists to confer jurisdiction over a party as to whom no independent basis of federal jurisdiction exists." *Id.,* 427 U.S. at 18, 96 S.Ct. at 2422. The Court in *Aldinger* declined to grant pendent party jurisdiction not because it was constitutionally impermissible per se, but because the Court determined that the federal statute at issue there, 42 U.S.C. § 1983, excluded conferring pendent party jurisdiction. However, *Aldinger* remains significant because of its discussion of the two factors to be considered in analyzing pendent party jurisdiction: whether such exercise is constitutional and whether such exercise is affected by the federal statute at issue. *See generally* Annotation, *Pendent Jurisdiction of Federal Court Over State Claim Against Party Not Otherwise Subject to Federal Jurisdiction Where State Claim is Sought to be Joined With Claim Arising Under Laws, Treaties, or Constitution of United States,* 72 A.L.R.FED. 191, 199 (1985).

### 1. Constitutional Analysis

■ The first factor to be determined in analyzing pendent jurisdiction is whether the requirements of Article III of the Constitution are fulfilled. *Aldinger,* 427 U.S. at 16–17, 96 S.Ct. at 2421–2422. Specifically, Article III is satisfied in this context when 1) there is a federal claim that is of sufficient substance to confer federal jurisdiction; and 2) the federal and state claims are derived from a "common nucleus of operative fact" such that a plaintiff "would ordinarily be expected to try them in one judicial proceeding...." *Gibbs,* 383 U.S. at 725, 86 S.Ct. at 1138, *quoted in Aldinger,* 427 U.S. at 12, 96 S.Ct. at 2419. *See Prudential–Bache Securities Inc. v. Lisle Axis Assoc.,* 657 F.Supp. 190, 194–95 (N.D. Ill.1987) (constitutional analysis in context of pendent party jurisdiction).

In the instant case, plaintiffs have no difficulty meeting the first prong of the constitutional portion of the *Aldinger* test: defendant does not dispute the substantiality of plaintiff Bob Campbell's § 10(b) claim against him. Similarly, defendant apparently concedes that Counts II through VI arise out of the same "nucleus of operative fact."

## 2. Statutory Analysis

■ The second factor to be considered in the pendent party jurisdiction analysis is whether the relevant federal statute limits the exercise of pendent jurisdiction. *Aldinger*, 427 U.S. at 17–18, 96 S.Ct. at 2421–2422. This analysis has been described as "an examination of the posture in which the nonfederal claim is asserted and of the specific statute that confers jurisdiction over the federal claim, in order to determine whether 'Congress in [that statute] has ... expressly or by implication negated' the exercise of jurisdiction over the particular nonfederal claim." *Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 373, 98 S.Ct. 2396, 2402, 57 L.Ed. 2d 274 (1978) (*quoting Aldinger*, 427 U.S. at 18, 96 S.Ct. at 2422).

Here, the jurisdictional statute supporting Count I (Bob's § 10(b) claim) is 15 U.S.C. § 78aa ("Section 27") of the Securities Exchange Act of 1934 which provides that:

> The district courts of the United States ... shall have exclusive jurisdiction of violations of this chapter or the rules and regulations thereunder, and of all suits in equity and actions at law brought to enforce any liability or duty created by this chapter or the rules and regulations thereunder.

Neither party has discussed whether this statute demonstrates Congress' intention to negate the exercise of federal jurisdiction over non-federal claims. As best I can determine, the Eighth Circuit Court of Appeals has not addressed this precise issue. However, in *Prudential–Bache Sec., Inc. v. Lisle Axis Assoc.*, 657 F.Supp. 190 (N.D. Ill.1987), the court addressed this issue in the context of the defendant's argument that § 27 impliedly deprives federal courts

of jurisdiction over related state law claims against pendent parties. The defendant in *Prudential–Bache* argued that § 27's focus on federal securities law claims, as exclusively reserved for federal courts, implied congressional intent to deny federal jurisdiction over securities-related claims where no federal securities laws claim exists between the parties. *Id.* at 195. The court in *Prudential–Bache* rejected this negative implication argument and concluded that nothing in § 27 negates federal jurisdiction.

One of the reasons that the *Prudential–Bache* court rejected defendant's argument that Congress in enacting § 27 "impliedly" intended to prevent federal courts from exercising pendent party jurisdiction was certain dicta in *Aldinger:*

> When the grant of jurisdiction to a federal court is *exclusive*, for example, as in the prosecution of tort claims against the United States under 28 U.S.C. § 1346, the argument of judicial economy and convenience can be coupled with the additional argument that *only* in a federal court may all of the claims be tried together.

427 U.S. at 18, 96 S.Ct. at 2422 (emphasis added) (footnote omitted), discussed in *Prudential–Bache*, 657 F.Supp. at 196.

In *Bolton v. Gramlich*, 540 F.Supp. 822 (S.D.N.Y.1982), later proceeding *Terrydale Liquidating Trust v. Gramlich*, 549 F.Supp. 529 (S.D.N.Y.1982), the court in examining § 27 concluded that Congress, by its grant of exclusive jurisdiction, had shown a desire to gather complex securities litigation in a single forum. 540 F.Supp. at 846. When jurisdiction over a federal claim is exclusive, the court should look for some evidence that Congress intended to force plaintiffs to bifurcate litigation arising out of a single core of operative fact before it finds implicit negation of pendent party jurisdiction. *Id.*

In *Ausland v. United States*, 488 F.Supp. 426 (N.D.S.D.1980), the court addressed the pendent party jurisdiction issue in the context of the Federal Tort Claims Act's grant of exclusive federal jurisdiction and after reviewing the sparse Eighth Cir-

cuit authority, the court concluded that pendent party jurisdiction was proper. In *Ausland,* the farmer plaintiffs sued 1) the United States and 2) several non-governmental elevators and grain companies for losses suffered when grain they had purchased from the government became contaminated. The non-governmental defendants moved to dismiss for lack of jurisdiction since no diversity of citizenship existed and because plaintiff's claims against them did not arise under the Constitution or laws of the United States. The court denied the non-governmental defendants' motion and exercised jurisdiction over them as pendent parties on the following basis:

> The lower federal courts are split on the question of "pendent parties." The majority of Courts of Appeal have held that where federal jurisdiction over the federal claim is exclusive, as under the Federal Tort Claims Act, the argument that the federal court is the *only* court that can handle *all* the claims should lead to jurisdiction over additional parties, in line with the *Aldinger* quote above. *Ortiz v. United States,* 595 F.2d 65 (1st Cir.1979); *Dick Meyers Towing Service Inc. v. United States,* 577 F.2d 1023 (5th Cir. 1978); *Morrissey v. Curran,* 567 F.2d 546 (2nd Cir.1977); *Transok Pipeline v. Darks,* 565 F.2d 1150 (10th Cir.1977). Such an interpretation has been squarely rejected by the Ninth Circuit in *Ayala v. United States,* 550 F.2d 1196 (9th Cir. 1977), *cert. granted,* 434 U.S. 814, 98 S.Ct. 50, 54 L.Ed.2d 70, [ (1977) ], *cert. dismissed,* 435 U.S. 982, 98 S.Ct. 1635, 56 L.Ed.2d 76 (1978). The Court's research discloses three relevant Eighth Circuit Cases. *Kack v. United States,* 570 F.2d 754, 757, n. 4 (8th Cir.1978); *Schulman v. Huck Finn, Inc.,* 472 F.2d 864, 866–67 (8th Cir.1973); *Hatridge v. Aetna Casualty & Surety Co.,* 415 F.2d 809, 816–17 (8th Cir.1969). *Kack* was an action under the Federal Tort Claims Act in which plaintiff sought to bring an action against defendants other than the government. In a footnote, the court cited C. Wright, *Law of Federal Courts,* § 19 at 65 (2d Ed.1970) for the proposition that pendent jurisdiction applies only to claims, not to parties. The later edition of that text, C. Wright, *Law of Federal Courts,* § 19 at 76–77 (3d Ed.1976) recognizes that pendent jurisdiction is being applied to parties as well as claims, especially in light of *Aldinger* and *Moor [v. County of Alameda,* 411 U.S. 693, 93 S.Ct. 1785, 36 L.Ed.2d 596 (1973) ], *supra. Kack, supra,* does not cite *Schulman* and *Hatridge,* both of which permitted pendent party jurisdiction. *Hatridge* is not directly applicable, since it was a diversity case. The Aetna Casualty and Surety Company sought to remove an action to federal court when the primary claim was for less than $10,000. The court held that the consortium claim of plaintiff's husband would be joined with plaintiffs' claim in order to meet the jurisdictional amount, because the consortium was derivative to the main claim and thus could be expected to be disposed of in the same lawsuit. In addition, the court spoke favorably of the early cases extending pendent jurisdiction to parties and disapproved the narrow view of the Ninth Circuit. *Schulman* is more directly on point, since it involved a patent infringement case under federal law. A related state law claim for unfair competition was also stated. The district court dismissed the infringement claim against two of the defendants, but retained jurisdiction over all four defendants to adjudicate the state law claims. The Eighth Circuit affirmed, resting its holding on pendent jurisdiction and 28 U.S.C. § 1338(b), which allows for jurisdiction of state law unfair competition claims when joined with patent infringement claims. The court held that both general pendent jurisdiction and pendent jurisdiction under the patent jurisdiction statute should be interpreted so as to allow for pendent parties. It reaffirmed *Hatridge's* rejection of the restrictive Ninth Circuit precedent. The analysis in *Hatridge* and *Schulman* convinces this court that it has discretion to assert jurisdiction over all the claims in this lawsuit, and that the

footnote in *Kack* should not be read as mandating an opposite conclusion. *Ausland,* 488 F.Supp. at 429–30.

This reasoning, combined with that of *Bolton* and *Prudential–Bache,* convinces me that under *Aldinger,* pendent party jurisdiction *can* be exercised over the state law claims of Mark and Lolis Campbell.

### 3. Other Considerations

■ The final issue to be determined, once it is determined that pendent party jurisdiction *can* be exercised, is whether pendent party jurisdiction *should* be exercised. As with pendent claim jurisdiction, even when the two part test is satisfied, a district court may still in its discretion decline to exercise pendent party jurisdiction if such exercise is not justified by "considerations of judicial economy, convenience and fairness to litigants." *Zabkowicz v. West Bend Co.,* 789 F.2d 540, 546 (7th Cir.1986), *quoting Gibbs,* 383 U.S. at 726, 86 S.Ct. at 1139. *See also Ausland,* 488 F.Supp. at 430.

■ In the instant case, if pendent jurisdiction is exercised, all claims may be heard in federal court.

On the other hand, if pendent party jurisdiction is not exercised, Counts II through VI will be immediately dismissed and will presumably be heard in state court.

Because all claims are so closely related to the fact situation underlying the federal claim, all six counts should be tried in one forum. Judicial economy and convenience of the witnesses will be served by the exercise of pendent party jurisdiction over Counts II through VI.

### III. Conclusion

Therefore, for the reasons stated, it is hereby ORDERED that defendant Rosenberger's motion to dismiss Counts II through VI for lack of jurisdiction is denied.